**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

RUMANA RAZZAK
829 E. 154th St.
Cleveland, Ohio 44110

Plaintiff,

v.

MOHAMMAD A. HANNAN, a/k/a ASHRAFUL HANNAN and PORAG
2355 Thomson Way
Wellington, Florida 33414

and

REZA H. CHOWDHURY
18 Mitchell Avenue
Morton, Pennsylvania 19070

and

BIN TRADING LLC
c/o Mohammad A. Hannan, Registered Agent
2355 Thomson Way
Wellington, Florida 33414

and

BIN TRADING2 LLC
c/o Mohammad A. Hannan, Registered Agent
2355 Thomson Way
Wellington, Florida 33414

and

BIN OPTIONS POOL LLC
c/o Mohammad A. Hannan, Registered Agent
2355 Thomson Way
Wellington, Florida 33414

and

Case No. 1:26-cv-2730

Judge

**COMPLAINT**

**(JURY DEMAND ENDORSED HEREON)**

BIN GOPSHOP LLC
c/o Mohammad A. Hannan, Registered Agent
2355 Thomson Way
Wellington, Florida 33414

Defendants.

Plaintiff Rumana Razzak ("Plaintiff"), by and through undersigned counsel, for her Complaint against Defendants Mohammad A. Hannan a/k/a Ashraful Hannan and Porag ("Hannan"), Reza H. Chowdhury ("Chowdhury"), BIN Trading LLC, BIN Trading2 LLC, BIN Options Pool LLC, and BIN GOPSHOP LLC (collectively, the "BIN Entities" where appropriate), alleges as follows:

**NATURE OF THE ACTION**

1. This action arises from a multi-year course of investment solicitation, sale, administration, and withholding of pooled investment interests marketed to Plaintiff, an Ohio resident, through Facebook and other electronic communications, telephone calls, text messages, and direct payment instructions transmitted into Ohio.

2. Beginning in October 2021, Plaintiff paid at least $130,015.94 to or at the direction of Hannan and the BIN-related entities for pooled investment interests described by Defendants under names including GOPSHOP, Crypto, iBreast, Options, Intermediate, and Cactus. Plaintiff was a passive investor. She did not select trades, control the pooled accounts, possess the brokerage or custody records, or manage the BIN Entities.

3. Hannan and, from at least 2022 forward, Chowdhury personally participated in soliciting, arranging, documenting, and administering Plaintiff's investments. They represented, among other things, that the investments had significant profit potential, quoted investment values and profits, directed where Plaintiff should send money, and represented that Plaintiff's funds and investment interests were being tracked and administered by BIN.

4. After accepting Plaintiff's money, Defendants issued certificates and statements confirming substantial portions of her investments. Defendants' own records, however, have assigned

Plaintiff's funds among different pools inconsistently, have reflected different investment totals, and have not been accompanied by the underlying brokerage, custody, bank, trade, or transaction-level records necessary to verify how Plaintiff's money was actually invested, moved, valued, or lost.

5. When Plaintiff sought access to her money and a reliable accounting, Defendants delayed, asserted materially different withdrawal and risk restrictions than those previously communicated, and later invoked purported operating or membership documents to freeze distributions, impose offsets, and threaten charges of $1,000 per day. Plaintiff disputes that those later-asserted restrictions governed the investments when made or were validly assented to for all of her investment interests.

6. Plaintiff brings this action now to preserve claims arising from her earliest October 2021 transactions and the continuing series of later purchases. Defendants have recently taken the position through counsel that written agreements containing Florida choice-of-law, arbitration, and venue provisions govern. Plaintiff does not concede the formation, scope, timing, validity, or enforceability of any such provisions, and reserves all rights to challenge them when Defendants produce the exact documents, transmission records, and assent evidence on which they rely.

**PARTIES**

7. Plaintiff Rumana Razzak is a natural person and citizen of Ohio residing in Cuyahoga County, Ohio.

8. Defendant Mohammad A. Hannan is, upon information and belief, a natural person residing in Florida. He has also used the names Ashraful Hannan and Porag in communications with Plaintiff and others. Hannan has acted as a manager, principal, promoter, and controlling person of one or more BIN Entities.

9. Defendant Reza H. Chowdhury is, upon information and belief, a natural person residing in Pennsylvania. Chowdhury held himself out to Plaintiff as acting "from BIN," solicited and administered Plaintiff's investments, supplied banking and payment instructions, communicated

share prices and purported profits, transmitted BIN agreements and tax-related documents, and later described himself as a record keeper or third-party service provider.

10. Defendant BIN Trading LLC is a Florida limited liability company organized in 2021. Hannan is identified in Florida public records as a manager of BIN Trading LLC.

11. Defendant BIN GOPSHOP LLC is a Florida limited liability company organized in 2021. Hannan is identified in Florida public records as a manager of BIN GOPSHOP LLC. Plaintiff's earliest $7,500 pooled investment was later described by BIN records as a GOPSHOP investment that was transferred into a crypto pool, and BIN GOPSHOP later issued Plaintiff an ownership certificate for a Cactus investment.

12. Defendant BIN Trading2 LLC is a Florida limited liability company organized in 2022. Hannan and another individual are identified in Florida public records as managers. A 2024 Florida annual report lists Plaintiff and Chowdhury among numerous "limited members." Plaintiff disputes that such public filing, by itself, establishes her knowing assent to every operating-agreement term later invoked by Defendants.

13. Defendant BIN Options Pool LLC is a Florida limited liability company organized in 2023. Hannan and another individual are identified in Florida public records as managers. BIN Options Pool LLC later issued Schedule K-1 forms to Plaintiff reflecting her as a limited partner or other LLC member and allocating losses to her.

14. At all relevant times, each Defendant acted individually and/or through agents and entities within the scope of actual, apparent, or ratified authority. Allegations concerning conduct by a BIN Entity include conduct by its managers, agents, and persons acting on its behalf.

## JURISDICTION AND VENUE

15. This Court has original federal-question jurisdiction under 28 U.S.C. § 1331 because Plaintiff asserts claims under § 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b), SEC Rule 10b-5, 17 C.F.R. § 240.10b-5, and § 20(a) of the Exchange Act, 15 U.S.C. § 78t(a).

16. Under 15 U.S.C. § 78aa(a), the federal district courts have exclusive jurisdiction over claims created by the Exchange Act and its rules, and such an action may be brought in a district in which an act or transaction constituting the violation occurred.

17. This Court has supplemental jurisdiction under 28 U.S.C. § 1367 over Plaintiff's related Ohio, Florida, and common-law claims because those claims arise from the same transactions, communications, payments, investment interests, accounting, and alleged misconduct as the federal claims.

18. Personal jurisdiction exists because Defendants purposefully directed investment solicitations, electronic communications, telephone communications, payment instructions, certificates, tax documents, and investment administration into Ohio; accepted substantial payments sent from Ohio; knew Plaintiff was an Ohio resident; and maintained an ongoing investment relationship with her in Ohio.

19. Venue is proper in this District under 15 U.S.C. § 78aa(a) and 28 U.S.C. § 1391 because material acts and transactions constituting the alleged violations occurred in this District, including solicitations received by Plaintiff, investment decisions made by Plaintiff, payments sent by Plaintiff, and injuries sustained by Plaintiff in Cuyahoga County, Ohio.

20. Under Local Rule 3.8, Cuyahoga County is within the Cleveland office area of the Northern District of Ohio, Eastern Division.

## THE INVESTMENT INTERESTS WERE SECURITIES

21. Plaintiff invested money in pooled enterprises managed by Defendants and/or third-party managers selected or engaged by Defendants. Plaintiff expected profits to be generated predominantly from the trading, management, selection, allocation, and other efforts of Hannan, the BIN Entities, Chowdhury, and the persons to whom they entrusted pooled funds.

22. Plaintiff had no meaningful day-to-day managerial control over the pooled trading activity. Defendants controlled or arranged the custody, trading, allocation, accounting, valuation, and distribution of the pooled investment interests.

23. The investment interests sold to Plaintiff constituted "securities" within the meaning of the federal securities laws, including investment contracts and, where applicable, LLC membership or participation interests. They also constitute securities under Ohio Revised Code § 1707.01(B), which expressly includes LLC membership interests, participation agreements, profit-sharing interests, and investment contracts.

**INVESTMENT SOLICITATIONS AND PURCHASES**

24. Hannan cultivated Plaintiff through a shared BUET alumni network and Facebook groups associated with BIN. Plaintiff was invited to follow BIN-related groups and investment discussions and communicated with Hannan privately about investment opportunities.

25. Hannan and Chowdhury repeatedly emphasized to Plaintiff and others substantial return potential. Plaintiff recalls being told, including in telephone and electronic communications, that returns could exceed 50 percent and that investing her inherited funds could allow the money to grow enough to facilitate her planned purchase of a home in Ohio.

26. Plaintiff further understood from Defendants' communications that her investments would be professionally managed and tracked and that, when she needed the funds for a home purchase, she would have a practical mechanism to withdraw or redeem them. A later BIN shareholder statement expressly stated that one month's prior notice was required to withdraw funds.

27. In reasonable reliance on the investment solicitations, Defendants' statements, their continuing administration of the investments, and their representations concerning values and profits, Plaintiff made a series of payments to Defendants totaling at least $130,015.94.

28. On October 17, October 18, and November 1, 2021, Plaintiff sent three $2,500 electronic payments, totaling $7,500, at Hannan's direction for a pooled BIN-related investment. Defendants' later records described this investment as a GOPSHOP investment that was transferred to a crypto pool.

29. On or about October 31, 2022, Plaintiff purchased an additional $10,000 BIN-related investment by check payable to BIN Trading LLC with a notation identifying the iBreast pool.

30. By April 2022, Chowdhury had contacted Plaintiff identifying himself as "Reza from BIN" and discussing alternative pool choices for her funds. In October 2022, after Plaintiff expressed interest in an iBreast investment, Chowdhury provided BIN Trading LLC bank information and instructed her regarding the amount and method of payment.

31. In September 2023, Chowdhury sent Plaintiff bank information for the Options Pool, identified the account as BIN Trading2 LLC, recommended a wire transfer for tracking, quoted a per-share price, and explained that Hannan would accept a cashier's check at Hannan's Florida address.

32. On October 3, 2023, Plaintiff sent $40,411.12 by cashier's check payable directly to Hannan. Shortly afterward, Chowdhury confirmed that Plaintiff had paid for eight Options Pool shares and stated that the investment would be added to BIN's records when Hannan confirmed receipt.

33. In January 2024, before Plaintiff made further substantial payments, Chowdhury represented that Plaintiff's eight Options Pool shares had generated approximately $2,300 in profit and supplied a calculation purporting to show an increase in share value.

34. During January 2024, Plaintiff sent an aggregate of $33,104.82 in multiple official/cashier's-check payments at Hannan/BIN's direction. A January 30, 2024 BIN certificate signed or issued on behalf of Hannan expressly confirmed that Plaintiff had sent $33,104.82 "to be invested with us" but that the money had not yet been invested in a pool.

35. That same January 30, 2024 BIN certificate also confirmed that Plaintiff then had $10,000 in an iBreast Pool, $7,500 in a Crypto Pool, and $40,411 in an Options Pool. The certificate stated that the iBreast and Crypto pools were managed by an outside group identified by BIN as "Blacstone Commodity Group" and that the Options Pool was managed by BIN.

36. On February 27, 2024, Plaintiff sent an additional $14,000 official check payable directly to Hannan.

37. On May 14, 2024, Plaintiff sent an additional $25,000 cashier's check payable directly to Hannan.

38. BIN-related records later assigned Plaintiff's 2024 funds among Cactus, Crypto, Intermediate, and other pools in ways that are not internally consistent. BIN GOPSHOP issued a certificate stating that Plaintiff owned 10,000 Cactus shares against a $25,000 investment and an additional 10,000 bonus Cactus shares. Other BIN/Chowdhury records described some of the same period's funds as Crypto or Intermediate Pool money.

39. A BIN Trading2 certificate dated in June 2024 confirmed that Plaintiff owned eight Options Pool shares. BIN Options Pool LLC subsequently issued federal Schedule K-1 forms to Plaintiff reflecting ownership percentages and investment losses.

40. Defendants' own later communications and records have reflected totals and allocations different from Plaintiff's $130,015.94 cash-payment total, including references to reinvested profits and a higher aggregate investment figure. The complete source ledger and transaction-level tracing remain exclusively or primarily within Defendants' possession.

## MATERIAL MISREPRESENTATIONS AND OMISSIONS

41. Before and in connection with Plaintiff's purchases, Defendants failed to provide a complete, consistent, transaction-specific disclosure of the material terms now asserted against Plaintiff, including any purported five-year lockup, broad arbitration requirement, mandatory West

Palm Beach forum, authority to freeze all distributions, capital-account offsets, non-disparagement penalties, or $1,000-per-day charges.

42. Defendants instead communicated investment opportunities through informal social-media, telephone, and direct-message channels, quoted prospective or purported returns and share values, directed payments, and issued post-payment certificates confirming investments.

43. Plaintiff was not given reliable access to the underlying brokerage, bank, custody, wallet, trade, or fund records necessary to verify where her money was placed, whether trades actually occurred as represented, how pooled gains and losses were allocated, or the basis for changing valuations.

44. Defendants' failure to disclose the actual liquidity restrictions, the degree and location of custody of investor funds, the precise role and compensation of outside managers, the use of personal accounts to receive some investor payments, the complete risk profile, and the inconsistent allocation/accounting methodology was material to a reasonable investor.

45. The materiality of withdrawal rights was particularly acute because Defendants knew Plaintiff intended to use her invested funds for the purchase of a home in Ohio. A BIN statement later supplied to Plaintiff represented that one month's notice was sufficient for withdrawal.

46. In at least some instances, Plaintiff's payments were made directly to Hannan's personal name or to another non-BIN recipient at Hannan's direction. Defendants have since asserted through counsel that individual-account receipts were isolated and were promptly redirected to LLC accounts, but Defendants have not provided Plaintiff the bank tracing or source documents necessary to verify that assertion.

47. Plaintiff would not have made the challenged investments, or would have paid materially less for them, had she known the true facts concerning liquidity, allocation, custody, management, contractual restrictions, risk, and Defendants' ability to freeze, offset, or condition return of her money.

48. Defendants knew or were reckless in not knowing the true terms, custody arrangements, accounting, allocations, and limitations applicable to the investment products they were selling and administering. Hannan controlled the BIN Entities and issued or caused BIN certificates and statements to be issued. Chowdhury personally supplied payment instructions, share prices, purported profit calculations, agreements, and investor updates.

49. Defendants' scienter is further supported by the disparity between their contemporaneous role in soliciting and administering Plaintiff's investments and their later attempts to minimize or redefine those roles, as well as by inconsistent investment totals and allocations and the withholding of the source records necessary to reconcile them.

**WITHDRAWAL REQUESTS, ACCOUNTING DISPUTES, AND RETALIATORY MEASURES**

50. By late 2024 and into 2025, Plaintiff was actively seeking documentation concerning her investments and was planning for a home purchase. Defendants knew liquidity and access to funds were important to her.

51. As Plaintiff requested withdrawal and accounting information, Defendants increasingly attributed her funds to losses, delayed or conditioned exits, and failed to provide a complete transaction-level reconciliation supported by source records.

52. In 2025, Chowdhury exchanged messages with Plaintiff attempting to reconstruct her investment history. Those messages themselves reflected uncertainty and discrepancies concerning amounts, pool assignments, reinvested profit, and missing or unlocated payments.

53. By 2026, after Plaintiff questioned the investments and communicated with other investors, Hannan and BIN Trading2 LLC/BIN Options Pool LLC issued a purported default and defamation notice accusing Plaintiff of violating operating or membership documents, freezing distributions, asserting capital-account offsets, and announcing alleged damages of at least $1,000 per day beginning March 22, 2026.

54. Plaintiff disputes the validity and applicability of those purported penalties, offsets, freezes, forfeitures, and later-asserted contractual restrictions. Plaintiff did sign at least one investment-specific document in 2024 in connection with a later Cactus investment, but she does not concede that document—or any later operating or membership document—retroactively governs earlier investments or authorizes the punitive measures asserted across all of her interests.

55. Defendants have now, through counsel, taken the position that Plaintiff received a Membership Assignee Agreement and that one or more Operating Agreements contain Florida choice-of-law, arbitration, and West Palm Beach venue provisions. Defendants have not provided Plaintiff with the exact operative historical versions, complete signature/transmission/audit trail, or evidence establishing that each such term preceded and governed each challenged purchase.

56. Defendants also contend through counsel that Plaintiff's recovery should be determined from the "current value" of her investment interests rather than original principal, while simultaneously withholding the transaction-level accounting and underlying source records necessary to verify that value.

**DISCOVERY OF THE VIOLATIONS AND TIMELINESS**

57. Plaintiff did not know, and could not reasonably have known, the full facts constituting Defendants' alleged securities violations at the time of the purchases because Defendants controlled the material source records and continued to represent that the investments were being managed, valued, and administered through BIN and associated managers.

58. Plaintiff's concerns matured as Defendants failed to provide reliable account-level documentation, reported significant losses, restricted withdrawals, asserted inconsistent allocations and totals, and ultimately threatened freezes, offsets, and penalties when she sought return of her money and communicated with other investors.

59. Plaintiff discovered the facts constituting the actionable fraud within two years before filing this action. This Complaint is also being filed before expiration of the five-year outside period applicable to Plaintiff's earliest October 2021 transaction to the extent 28 U.S.C. § 1658(b)(2) applies.

60. For the Ohio statutory claims, Plaintiff likewise brings this action within the period prescribed by Ohio Revised Code § 1707.43(B), including before expiration of the five-year outside period measured from her earliest October 2021 sale or contract for sale.

**COUNT I**
**(Securities Fraud - Section 10(b) of the Exchange Act and SEC Rule 10b-5 against Hannan, Chowdhury, and the BIN Entities, according to their respective participation)**

61. Plaintiff incorporates the preceding paragraphs as though fully rewritten herein.

62. The investment interests purchased by Plaintiff were securities. Defendants used interstate wires, electronic communications, telephone communications, the mails, banking channels, and other instrumentalities of interstate commerce in connection with the offer, purchase, sale, administration, and attempted retention of those securities.

63. In connection with Plaintiff's purchases, Defendants directly or indirectly employed devices, schemes, and artifices to defraud; made material misstatements and omissions; and engaged in acts, practices, or courses of business that operated as a fraud or deceit upon Plaintiff, in violation of 15 U.S.C. § 78j(b) and 17 C.F.R. § 240.10b-5.

64. The material misstatements and omissions included, among other things, representations concerning expected or purported profitability and share value; representations concerning the tracking, management, and availability of Plaintiff's funds; failures to disclose material liquidity and contractual restrictions later asserted against her; failures to disclose the complete custody, allocation, and accounting arrangements; and post-purchase statements intended to induce Plaintiff to leave funds invested or commit additional funds.

65. Hannan made or caused material statements to be made and controlled the BIN Entities that received, issued, documented, allocated, and/or administered Plaintiff's investments. Chowdhury

personally made material statements and performed primary acts in connection with Plaintiff's purchases from at least 2022 forward, including directing payments, identifying accounts and pools, quoting share prices and profits, and transmitting investment documentation.

66. Defendants acted knowingly or recklessly. They knew the actual terms and restrictions they intended to impose, knew or controlled the actual destination and accounting of investor payments, knew what records existed or did not exist, and knew whether the profit, value, withdrawal, and allocation representations being made to Plaintiff were accurate and complete.

67. Plaintiff reasonably relied upon Defendants' material statements, omissions, course of dealing, payment instructions, confirmations, certificates, and purported profit information when purchasing and retaining the investments and making additional purchases.

68. Plaintiff suffered economic loss because she paid at least $130,015.94 for interests whose true value and liquidity were materially less than represented and whose funds are now withheld and/or claimed to have suffered substantial losses. The concealed and misstated risks, restrictions, custody, allocations, and accounting were a substantial and foreseeable cause of Plaintiff's loss.

69. As a direct and proximate result of these violations, Plaintiff is entitled to recover damages and all other relief available under federal law.

**COUNT II**
**(Controlling-Person Liability - Section 20(a) of the Exchange Act Against Hannan)**

70. Plaintiff incorporates the preceding paragraphs as though fully rewritten herein.

71. Hannan directly or indirectly controlled BIN Trading LLC, BIN Trading2 LLC, BIN Options Pool LLC, and BIN GOPSHOP LLC within the meaning of 15 U.S.C. § 78t(a). He served as a manager and principal, directed or approved the investment programs and communications, received or controlled payments, and caused or authorized certificates, statements, restrictions, and other investor communications.

72. The controlled BIN Entities are liable for primary violations alleged in Count I. Hannan did not act in good faith and directly or indirectly induced, participated in, or caused the acts constituting those violations.

73. Hannan is therefore jointly and severally liable to Plaintiff to the extent provided by 15 U.S.C. § 78t(a).

**COUNT III**
**(Ohio Securities Act - R.C. 1707.43 and 1707.44 against all Defendants, according to their respective participation)**

74. Plaintiff incorporates the preceding paragraphs as though fully rewritten herein.

75. Plaintiff purchased securities in Ohio within the meaning of Ohio Revised Code Chapter 1707, including investment contracts and LLC membership or participation interests.

76. Defendants violated, among other provisions, R.C. 1707.44(B)(4) by knowingly making or causing false representations concerning material and relevant facts for the purpose of selling securities in Ohio, and R.C. 1707.44(G) by knowingly engaging in acts or practices in purchasing or selling securities that are declared illegal, defined as fraudulent, or prohibited by Chapter 1707.

77. Upon information and belief, one or more challenged securities or transactions were also sold in violation of R.C. 1707.44(C)(1) because the securities were not registered and no applicable exemption covered the sale. Plaintiff is not required to negate statutory exemptions, and she pleads this theory in the alternative pending Defendants' production of registration and exemption records.

78. Under R.C. 1707.43(A), each person making an unlawful sale and each person who participated in or aided the seller in any way in making the sale is jointly and severally liable, subject to the statute's terms.

79. Hannan and the applicable BIN Entities were sellers and direct participants. Chowdhury participated in or aided later sales by soliciting Plaintiff, discussing pool choices,

supplying bank/payment information, quoting share prices and profits, confirming purchases, and administering investment records.

80. Plaintiff elects rescission under R.C. 1707.43(A) to the extent applicable and tenders, and stands ready to transfer or surrender, the securities or investment interests upon payment of the amounts required by law.

81. Plaintiff seeks the full amount paid for the unlawful sales, taxable court costs, and all other relief available under Ohio law.

**COUNT IV**
**(Florida Securities and Investor Protection Act - Fla. Stat. §§ 517.301 and 517.211 against all Defendants, in the alternative to the extent Florida law applies)**

82. Plaintiff incorporates the preceding paragraphs as though fully rewritten herein.

83. Defendants have expressly invoked Florida law as governing Plaintiff's investment relationship. Without conceding that Florida law displaces Ohio law, Plaintiff therefore pleads this claim in the alternative under Fed. R. Civ. P. 8(d).

84. In connection with the offer and sale of Plaintiff's investments, Defendants employed devices, schemes, or artifices to defraud; obtained money through materially untrue statements or omissions; and/or engaged in transactions, practices, or courses of business that operated as a fraud or deceit, in violation of Fla. Stat. § 517.301.

85. Hannan and the applicable BIN Entities made the sales and personally participated in them. Chowdhury personally participated in or aided later sales through the conduct described above.

86. Under Fla. Stat. § 517.211, persons who violate § 517.301 and qualifying directors, officers, partners, or agents who personally participate or aid the sale are subject to the private remedies provided by statute.

87. Plaintiff still owns or is treated by Defendants as owning the challenged investment interests. Plaintiff elects rescission to the extent available and tenders, and stands ready to transfer or

surrender, those interests upon repayment of the consideration, statutory interest, and other amounts required by law.

88. Plaintiff also seeks reasonable attorneys' fees and costs to the extent recoverable under Fla. Stat. § 517.211.

**COUNT V**
**(Fraud and Fraudulent Inducement against Hannan, Chowdhury, and the BIN Entities, according to their respective participation)**

89. Plaintiff incorporates the preceding paragraphs as though fully rewritten herein.

90. Defendants made material representations and concealed material facts concerning the nature, expected profitability, valuation, liquidity, custody, allocation, management, and withdrawal of Plaintiff's investment funds, as set forth with particularity above.

91. The representations were false or materially incomplete when made. Defendants knew of their falsity or incompleteness or made them with reckless disregard for the truth because Defendants controlled the investment structure, accounts, restrictions, and records about which they spoke.

92. Defendants intended that Plaintiff rely on the representations and omissions so that she would invest, leave money invested, and make additional purchases.

93. Plaintiff justifiably relied on Defendants' statements, payment instructions, purported profit calculations, certificates, and continuing representations concerning the administration and availability of her investments.

94. Plaintiff suffered compensatory damages as a direct and proximate result. Defendants' conduct was intentional, willful, malicious, and/or demonstrated a conscious disregard for Plaintiff's rights, entitling Plaintiff to punitive damages to the extent permitted by applicable law.

**COUNT VI**
**(Breach of Contract / Promissory Estoppel against Hannan and the Applicable BIN Entities, in the alternative)**

95. Plaintiff incorporates the preceding paragraphs as though fully rewritten herein.

96. Defendants accepted Plaintiff's payments and repeatedly documented that she owned specified investment interests. The parties' course of dealing included obligations to account accurately for Plaintiff's investments, administer them in accordance with the represented terms, and honor applicable withdrawal or distribution terms.

97. A BIN shareholder statement issued to Plaintiff represented that one month's prior notice was required to withdraw funds. Defendants also communicated with Plaintiff concerning access to funds for a contemplated home purchase.

98. To the extent enforceable contracts existed, Hannan and/or the applicable BIN Entities materially breached them by failing to provide a reliable accounting, failing to administer and allocate funds consistently with the agreed terms, refusing or conditioning withdrawal contrary to the represented terms, and imposing later restrictions, freezes, offsets, or penalties not contained in an operative agreement binding Plaintiff at the relevant time.

99. Alternatively, Defendants made promises and representations upon which they reasonably should have expected Plaintiff to rely, Plaintiff did rely to her detriment, and injustice can be avoided only by enforcing those promises or awarding reliance and restitutionary relief.

100. Plaintiff seeks compensatory damages, restitution, specific or declaratory relief as appropriate, prejudgment interest, and all other relief allowed by law.

**COUNT VII**
**(Unjust Enrichment and Restitution against Hannan and the Applicable BIN Entities, in the alternative)**

101. Plaintiff incorporates the preceding paragraphs as though fully rewritten herein.

102. Plaintiff conferred benefits totaling at least $130,015.94 upon Hannan and the BIN-related investment enterprises at Defendants' request or direction.

103. Defendants knew of and accepted those benefits and used, transferred, pooled, or controlled the associated funds and investment interests.

104. To the extent no enforceable contract governs any challenged transaction or remedy, it would be unjust for Defendants to retain Plaintiff's money or its traceable proceeds without providing the promised investment rights, a reliable accounting, and lawful withdrawal or restitution.

105. Plaintiff is entitled to restitution, disgorgement of unjust benefits, prejudgment interest, and other equitable relief.

## COUNT VIII
**(Declaratory Judgment - Purported Freeze, Offsets, Penalties, and Forfeitures against Hannan, BIN Trading2 LLC, and BIN Options Pool LLC)**

106. Plaintiff incorporates the preceding paragraphs as though fully rewritten herein.

107. An actual controversy exists concerning Defendants' asserted right to freeze Plaintiff's distributions, charge or offset alleged damages of $1,000 per day beginning March 22, 2026, reduce or forfeit her capital account, and impose other purported default remedies based on operating, membership, non-disparagement, or other provisions that Plaintiff disputes were validly adopted, timely disclosed, or binding upon her investment interests.

108. Those threatened charges and offsets directly affect the present value and accessibility of Plaintiff's property and have been invoked as a basis for withholding or reducing amounts otherwise attributable to Plaintiff.

109. Under 28 U.S.C. §§ 2201 and 2202, Plaintiff seeks a declaration of the parties' rights and obligations, including that Defendants may not enforce any freeze, offset, $1,000-per-day charge, forfeiture, or comparable remedy against Plaintiff unless Defendants establish a valid, enforceable, and applicable contractual and legal basis that bound Plaintiff before the alleged breach and authorizes the specific remedy asserted.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Rumana Razzak respectfully requests that the Court enter judgment in her favor and against Defendants, as applicable, and award:

A. Rescission of unlawful securities transactions and restitution of the consideration paid, including at least $130,015.94, subject to proof and lawful offsets for any actual distributions or income received;

B. Compensatory damages in an amount to be proven at trial for federal securities fraud, common-law fraud, breach of contract, and other legally cognizable injuries;

C. Statutory interest, prejudgment interest, and post-judgment interest as permitted by law;

D. A transaction-level accounting of Plaintiff's funds, including receipt, deposit, transfer, allocation, trading, custody, valuation, gain/loss, distribution, and present-value information, with supporting source records;

E. A declaration concerning the invalidity or non-applicability of any purported freeze, offset, $1,000-per-day charge, forfeiture, or other penalty not shown to arise from a valid and enforceable agreement applicable to Plaintiff;

F. Punitive damages on the common-law fraud claim to the extent permitted by applicable law and proven by the evidence;

G. Reasonable attorneys' fees and costs where authorized by statute or other applicable law, including to the extent available under Florida Statutes Chapter 517;

H. Taxable costs under R.C. 1707.43 and other applicable provisions;

I. Leave to amend as justice requires after Defendants produce the operative agreements, signature/audit trails, transaction records, and source accounting presently within their possession, custody, or control; and

J. All other legal and equitable relief the Court deems just and proper.

Respectfully submitted,

**SAMMON LAW, LLC**

*/s/ Colin P. Sammon*
Colin P. Sammon (Ohio Bar No. 0076011)
13940 Cedar Road, #342
University Heights, Ohio 44118
Telephone: (216) 832-1400
Facsimile: (216) 916-4905
Email: colin@sammonlaw.com

*Counsel for Plaintiff Rumana Razzak*

**JURY DEMAND**

Plaintiff demands a trial by jury on all claims and issues so triable.